## THE STATE v. DONALDSON ET AL.

It is an indictable conspiracy for several employés to combine and notify their employer, that unless he discharges certain enumerated persons, they will, in a body, quit his employment.

This was a motion to quash an indictment charging a conspiracy, which had been brought into this court by *certiorari*.

The substantial facts constituting the alleged crime were these, viz., that the defendants, and divers other evil disposed persons, &c., being journeymen workmen employed by Richmond Ward, John C. Little, and others, who then and there were engaged together in the manufacture of patent leather, and as curriers, maliciously, to control, injure, terrify, and impoverish their said employers, and force and compel them to dismiss from their said employment certain persons, to wit, Charles Beggan and William Pendergrast, then and there retained by their said employers as journeymen and workmen for them, and to injure said Charles and William, and without having any lawful cause of objection to said Charles and William, unlawfully did conspire, combine, confederate, and agree together to quit, leave, and turn out from their said employment, until and unless the said last mentioned journeymen and workmen should be dismissed by their said employers. The indictment then further charged, that in pursuance of such conspiracy, they gave notice of their agreement to their said employers, and required them to discharge the said Charles and William, which, being refused, they quitted their said employment, and remained away until their demand was complied with.

The motion was argued before the CHIEF JUSTICE, and Justices BEDLE and DALRIMPLE.

For the motion, *T. N. McCarter*.

For the state, *C. Parker*.

The opinion of the court was delivered by

BEASLEY, C. J. There is, perhaps, no crime, an exact definition of which it is more difficult to give than the offence of conspiracy. That a combination of persons to effect an and, itself of an indictable nature, will constitute this crime, is clear; nor is there any more doubt that, though the purpose the confederacy is designed to accomplish be not criminal, yet if the means adopted be of an indictable character, this offence is likewise committed. Thus far the limits are clearly defined, and embrace, without exception, all cases which fall within them. But when we proceed one step beyond the lines thus marked out, the cases which have been adjudged to be conspiracies appear to stand apart by themselves, and are devoid of that analogy to each other which would render them susceptible of classification. It is certain, however, that there are a number of cases, in which neither the purpose intended to be accomplished nor the means designed to be used were criminal, which have been regarded to be indictable conspiracies. And yet it is obvious that, in the nature of things, it cannot be every collusion between two or more persons to do an unlawful act, or an indifferent act by unlawful means, which will constitute an offence of a public nature; for if this were so, a large portion of the transactions which, in the ordinary course of litigation between party and party, comes before the courts, would assume a criminal aspect, in which the state would have an interest. Indeed, I think it may be said that there are, comparatively, but few cases of combinations in which indictability does not attach, either to the end in view, or to the instrumentalities devised, which are punishable by a public prosecution. It is true, that running to an extreme, in the case of *The State* v. *Rickey*, 4 *Halst.* 293, Mr. Justice Ford insisted that, up to his day, there was but a single case extant—that of *Rex* v. *Cope et al.*, 1 *Strange* 144, which held that an indictment for a conspiracy would lie for a combination of two or more to commit a private injury which was not a public wrong; and he further insisted that

the case referred to was erroneously decided; but Mr. Justice Ryerson did not, as is evident from the grounds upon which he rests his judgment, concur in that view; and the course of reasoning adopted by Mr. Justice Ford is now very generally admitted to be fallacious. In the case of *The State* v. *Norton*, 3 *Zab.* 44, the view of the law expressed by Mr. Justice Ford is disapproved of, and Chief Justice Green, in stating his conclusion, after an examination of the subject, remarks, " the great weight of authority, the adjudged cases, no less than the most approved elementary writers, sustain the position, that a conspiracy to defraud individuals or a corporation of their property, may, in itself, constitute an indictable offence, though the act done, or proposed to be done in pursuance of the conspiracy, be not, in itself, indictable."

The rule of law thus enunciated appears to me to be the correct one. There are a number of cases which cannot be sustained upon any other doctrine. To this class belongs the decision that it was a conspiracy to induce a young female, by false representations, to leave the protection of the house of her parent, in order to facilitate her prostitution. *Rex* v. *Lord Grey*, 3 *Hargrave's State Trials* 519; *Rex* v. *Sir Francis Deleval and others*, 3 *Burr.* 1434. So a conspiracy to impoverish a tailor, and prevent him, by indirect means, from carrying on his trade, *The King* v. *Eccles*, 3 *Dougl.* 337. So a conspiracy to marry paupers, with a view to charge one parish and exonerate another, *Rex* v. *Tarrent*, 4 *Burr.* 2106; or to charge a man with being the father of a bastard, *Rex* v. *Armstrong*, 1 *Vent.* 304; *Rex* v. *Kimberty*, 1 *Lev.* 62; *Rex* v. *Timberly*, *Sid.* 68; or a combination to impoverish a class of persons, *Rex* v. *Sterling*, 1 *Lev.* 125; *S. C., Sid.* 174. These are all cases, it will be noticed, in which the act which formed the foundation of the indictment would not, in law, have constituted a crime, if such act had been done by an individual, the combination being alone the quality of the transactions which made them respectively indictable.

I conclude, then, that there is no uncertainty in this legal

topic to this extent, in addition to the principles before adverted to, that cases may occur in which the purpose designed to be accomplished becomes punitive, as a public offence, solely from the fact of the existence of a confederacy to effect such purpose. It is certainly not to be denied, however, that great practical difficulty is experienced whenever any attempt is made to lay down any general rules by which to discriminate that class of combinations which becomes thus punishable, from those which are to be regarded in their results as mere civil injuries, remediable by private suit. It may be safely said, nevertheless, that a combination will be an indictable conspiracy, whenever the end proposed, or the means to be employed are of an highly criminal character; or where they are such as indicate great malice in the confederates; or where deceit is to be used, the object in view being unlawful; or where the confederacy, having no lawful aim, tends simply to the oppression of individuals. A careful analysis of the cases which have been heretofore adjudged, will reveal the presence of one or more of the qualities here enumerated; to this extent, therefore, they may be relied on as safe criteria whereby to test new emergencies as they may be presented for adjudication.

In view, then, of these general deductions, and guided by the decisions above cited, let us turn our attention to the particular indictment now before us.

The substantial offence charged is, that the defendants combined to compel their employer to discharge certain of their fellow workmen, the means adopted to enforce this concession being an announced determination to quit their employment in a body and by a simultaneous act. On the argument before this court, counsel in behalf of the state endeavored to sustain the indictability of this charge, on the plea that the thing thus agreed to be done was an injury to trade, and consequently came within the express language of the statute on the subject of conspiracy. *Nix. Dig.* 187, § 61.* But I cannot concur in this view. An act, to fall

* *Rev., p.* 261, § 191.

within this provision, must be one which, with directness, inflicts an injury on trade, as, for example, a combination to depress any branch of trade by false rumors. But, in the case before us, the act charged, if it could be said to injure trade at all, did so not proximately, but remotely. It is true that, at a far remove, an injury to an individual manufacturer may affect trade injuriously; but, in the same sense, so it is true, will an injury inflicted on a consumer of manufactured articles. But it is not this undesigned and incidental damage which is embraced within the statutory denunciation. On this account, I think the indictment does not present an affair which can be comprehended by the clause of the act which, in this respect, was relied on. But as it has already been decided by this court that the statute in question has not superseded the common law, with regard to the crime of conspiracy, *The State* v. *Norton*, 3 *Zab.* 40, the question still remains to be resolved, whether the facts charged on this record do not constitute such crime upon general principles.

It appears to me that it is not to be denied, that the alleged aim of this combination was unlawful; the effort was to dictate to this employer whom he should discharge from his employ. This was an unwarrantable interference with the conduct of his business, and it seems impossible that such acts should not be, in their usual effects, highly injurious. How far is this mode of dictation to be held lawful? If the manufacturer can be compelled in this way to discharge two or more hands, he can, by similar means, be coerced to retain such workmen as the conspirators may choose to designate. So his customers may be proscribed, and his business in other respects controlled. I cannot regard such a course of conduct as lawful. It is no answer to the above considerations to say, that the employer is not compelled to submit to the demand of his employés; that the penalty of refusal is simply that they will leave his service. There is this coercion: the men agree to leave simultaneously, in large numbers and by preconcerted action. We cannot close our

eyes to the fact, that the threat of workmen to quit the manufacturer, under these circumstances, is equivalent to a threat, that unless he yield to their unjustifiable demand, they will derange his business, and thus cast a heavy loss upon him. The workmen who make this threat understand it in this sense, and so does their employer. In such a condition of affairs, it is idle to suggest that the manufacturer is free to reject the terms which the confederates offer. In the natural position of things, each man acting as an individual, there would be no coercion; if a single employé should demand the discharge of a co-employé, the employer would retain his freedom, for he could entertain or repel the requisition without embarrassment to his concerns; but in the presence of a coalition of his employés, it would be but a waste of time to pause to prove that, in most cases, he must submit, under pain of often the most ruinous losses, to the conditions imposed on his necessities. It is difficult to believe that a right exists in law, which we can scarcely conceive can produce, in any posture of affairs, other than injurious results. It is simply the right of workmen, by concert of action, and by taking advantage of their position, to control the business of another. I am unwilling to hold that a right which cannot, in any event, be advantageous to the employé, and which must be always hurtful to the employer, exists in law. In my opinion, this indictment sufficiently shows that the force of the confederates was brought to bear upon their employer for the purpose of oppression and mischief, and that this amounts to a conspiracy.

I also think this result is sustained by all the judicial opinion which has heretofore been expressed on this point. In substance, the indictment in this case is similar to that in *Rex* v. *Ferguson and Edge*, 2 *Stark. R.* 489. Nor were the circumstances unlike; for in the reported case, the defendants were charged at common law with combining to quit and turn out from their employment, in order to prevent their employer from taking apprentices; and although the case, after trial and conviction, was mooted in the King's

State v. Donaldson et al.

Bench on points of evidence, no doubt was suggested as to the indictable nature of the offence, and the defendants were accordingly fined and imprisoned. So in *Rex* v. *Rickerdyke,* 1 *M. & Rob.* 179, the same doctrine was maintained. The indictment charged, that the defendant, with others, conspired to prevent certain hands from working in the colliery ; and the evidence showed that the body of the men met and agreed upon a letter addressed to their employer, to the effect that all the workmen would strike in fourteen days unless the obnoxious men were discharged from the colliery ; and Patterson, justice, held that these workmen had no right to meet and combine for the purpose of dictating to the master whom he should employ, and that this compulsion was clearly illegal. These two cases, it will be observed, sustain with entire aptness the opinion above expressed, and I have not found any of an opposite tendency. As to the case of *The Commonwealth* v. *Hunt,* 4 *Met.* 111, it is clearly distinguishable, and I concur entirely, as well with the principles embodied in the opinion which was read in the case, as in the result which was attained. The foundation of the indictment in that case, was the formation of a club by journeymen boot-makers, one of the regulations of which was, that no person belonging to it should work for any master workmen who should employ any journeyman or other workman who should not be a member of such club. Such a combination does not appear to possess any feature of illegality, for the law will not intend, without proof, that it was formed for the accomplishment of any illegal end. "Such an association," says Chief Justice Shaw, in his opinion, "might be used to afford each other assistance in times of poverty, sickness, and distress ; or to raise their intellectual, moral, or social condition ; or to make improvements in their art ; or for other purposes." The force of this association was not concentrated with a view to be exerted to oppress any individual, and it was consequently entirely unlike the case of men who take advantage of their position, to use the power, by a concert of action, which such position gives

them, to compel their employer to a certain line of conduct. The object of the club was to establish a general rule for the regulation of its members; but the object of the combination, in the case now before this court, was to occasion a particular result which was mischievous, and by means which were oppressive. The two cases are not parallel, and must be governed by entirely different considerations.

The motion to quash should not prevail.

CITED in *State* v. *Cole*, 10 *Vroom* 325; *State* v. *Hickling*, 12 *Vroom* 209.